FILED

10 MAR 22  PM 4: 37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  Louis A. Karasik (State Bar No. 100672)
   lou.karasik@alston.com
2  Andrew E. Paris (State Bar No. 162562)
   drew.paris@alston.com
3  Casondra K. Ruga (State Bar No. 237597)
   casondra.ruga@alston.com
4  Mitra M. Eskandari-Azari (State Bar No. 261978)
   mitra.azari@alston.com
5  **ALSTON & BIRD LLP**
   333 South Hope Street
6  Suite 1600
   Los Angeles, California 90071
7  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
8
9  Attorneys for Plaintiff,
   **DIRECTV, INC.**
10
11            **UNITED STATES DISTRICT COURT**
12            **CENTRAL DISTRICT OF CALIFORNIA**
13

| | |
|---|---|
| DIRECTV, INC., a California corporation, | Case No. **CV 10- 02061- DDP** |
| Plaintiff, | **[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |
| v. | |
| GEMS TV (USA) LIMITED, a Delaware corporation, | Date:       March 22, 2010 |
| Defendant. | Time:       8:30am |
| | Courtroom: |

13  DIRECTV, INC., a California corporation,

14                 Plaintiff,

15  v.

16  GEMS TV (USA) LIMITED, a Delaware
    corporation,
17

18                 Defendant.

19

Case No. **CV 10- 02061- DDP**

**[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Date:       March 22, 2010
Time:       8:30am
Courtroom:

[Filed Concurrently with Application for Temporary Restraining Order; Declaration of Toby Berlin ISO thereof; Application to File Documents Under Seal and Waive Notice; Declaration of Casondra K. Ruga ISO Application for Temporary Restraining Order and Application to File Documents Under Seal and Waive Notice; [Proposed] Granting Application for Temporary Restraining Order; and [Proposed] Order Granting Application to File Under Seal and Waive Notice]

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.    SUMMARY OF FACTS ......................................................... 2

    A.    The Parties and the Contract ................................................ 2

    B.    GemsTV Admits Its Obligation To Pay Further Fees ............... 4

    C.    GemsTV Repudiates Its Contract and Threatens to Transfer Assets to its Parent Company in the Cayman Islands ........................ 4

III.    A TEMPORARY RESTRAINING ORDER SHOULD ISSUE TO PREVENT IRREPERABLE INJURY TO DIRECTV AND TO PRESERVE THE STATUS QUO ................................................. 7

    A.    DIRECTV Has A Likelihood of Success On The Merits Of Its Claim for Injunctive Relief Under UFTA ............................... 8

        a.    The Proposed Transfer to Gems Holdings is A Transfer Under UFTA ....................................... 9

        b.    GEMSTV Did Not Receive Reasonable Equivalent Value For Its Transfer And It Is Engaged In A Business For Which The Remaining Assets Are Unreasonably Small ......................................... 10

        c.    Defendant Had Actual Intent To Hinder, Delay, Or Defraud Plaintiff .......................................... 11

            (1)    Transfer is Being Made To An Insider ..................... 13

            (2)    Transfer Of Substantially All Of GemsTV's Assets ....................................................... 13

            (3)    The Transfer Will Remove All Of GemsTV's Assets ....................................................... 13

            (4)    GemsTV Will Become Insolvent Upon Completion Of The Fraudulent Transfer ............... 14

            (5)    GemsTV Receives No Consideration For The Transfer ..................................................... 14

i

# TABLE OF CONTENTS
(continued)

Page

(6)    GemsTV's Transfer Would Violate The Governing Corporations Code...................................14

B.    DIRECTV Suffers Certain and Irreparable Injury if a Temporary Restraining Order is Not Issued ..............................................16

1.    Irreparable Injury is Shown Where An Asset Transfer Will Render the Defendant Judgment Proof..................................................16

C.    The Balance of Equities Weighs in DIRECTV's Favor .........................17

D.    Injunctive Relief Is In the Public Interest...............................................18

E.    Plaintiffs Should Not Be Required To Post A Bond To Secure This Injunction ..............................................................................................19

IV.    CONCLUSION...................................................................................................20

ii

### TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*III Finance Ltd. v. The Aegis Consumer Funding Group, Inc.,*
  99 CIV. 2579(DC), 1999 WL 461808 (S.D.N.Y. July 2, 1999)........................ 16

*Aviara Parkway Farms, Inc. v. Agropecuaria La Finca, S.P.R. de R.L.,*
  08CV2301JMCAB, 2009 U.S. Dist. LEXIS 7173 (S.D. Cal. Feb 2, 2009)...... 16

*California Pharmacists Ass'n v. Maxwell-Jolly,*
  --- F.3d----, 2010 WL 715401 (9th Cir. 2010).................................................. 18

*Dargan v. Ingram,*
  C08-1714RSL, WL 1437564 (W.D. Wash. May 22, 2009) .............................. 19

*First Technology Safety Systems, Inc. v. Depinet*
  11 F.3d 641(6th Cir. 1993)................................................................................ 19

*Gilder v. PGA Tour, Inc.,*
  936 F.2d 417 (9th Cir. 1991)............................................................................. 9

*In re 3DFX Interactive, Inc.,*
  389 B.R. 842 (Bankr. N.D. Cal. 2008) ............................................................. 11

*In re Bay Plastics, Inc.,*
  187 B.R. 315 (C.D. Cal.1995)........................................................................... 8

*Indep. Liv. Cntr. of Southern Cal., Inc. v. Maxwell-Jolly,*
  572 F.3d 644 (9th Cir. 2009)............................................................................. 7

*Intervest Mortgage Investment Co. v. Skidmore,*
  655 F.Supp. 2d 1100 (E.D. Cal. 2009).............................................................. 11

*Johnson v. Couturier,*
  572 F.3d 1067 (9th Cir. 2009)....................................................................... 7, 18

*Jorgensen v. Cassiday,*
  320 F.3d 906 (9th Cir. 2003)............................................................................. 19

*Lands Council v. McNair,*
  537 F.3d 981 (9th Cir.2008).............................................................................. 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S TRO

LEGAL02/31824040v1

# TABLE OF CONTENTS
(continued)

                                                                    **Page**

*Rosen Entertainment Systems, LP v. Eiger Vision,*
    343 F.Supp.2d 908 (C.D. Cal. 2004) ............................................... 16

*State of Alaska v. Native Village of Venetie,*
    856 F.2d 1384 (9th Cir. 1988) ......................................................... 7

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ......................................................... 7

**CALIFORNIA CASES**

*Annod Corp. v. Hamilton & Samuels,*
    100 Cal. App. 4th 1286, 123 Cal. Rptr.2d 924 (2002) ............................ 9, 11, 16

*Filip v. Bucurenciu,*
    129 Cal.App.4th 825, 28 Cal.Rptr.3d 884 (2005) ...................... 8-9, 12

**OTHER STATE CASES**

*Hahn v. Love,*
    273 S.W. 3d 712 (Tex. App. 2008) ................................................. 13

**STATE STATUTES**

8 Del. C. § 280 ......................................................................... 15

8 Del. C. § 281 ......................................................................... 15

Cal. Civ. Code § 3439.01 ............................................................ 10

Cal. Civ. Code § 3439.02 ............................................................ 14

Cal. Civ. Code § 3439.03 ............................................................ 11

Cal. Civ. Code § 3439.04 .................................................. 9-10, 12, 14

Cal. Civ. Code. § 3439.06 ................................................... 10, 12-14

NSR 78.590 .............................................................................. 15

## TABLE OF CONTENTS
(continued)

Page

**TREATISES**

W. Fletcher, *Fletcher Cyclopedia of the Law of Corporations*, § 8224 (2009) ..... 15

**OTHER AUTHORITIES**

Uniform Laws Annotated, Uniform Frauduelnt Transfer Act § 6 .......................... 10

# I.    **INTRODUCTION**

Plaintiff DIRECTV, Inc. ("DIRECTV") seeks a temporary restraining order and preliminary injunction to enjoin Defendant Gems TV (USA) Limited ("GemsTV") from taking threatened action to transfer its assets to the Cayman Islands to render itself insolvent and judgment proof following GemsTV's recent repudiation of its contract with DIRECTV.   As detailed herein, GemsTV and DIRECTV are parties to a contract ███████████████████ for DIRECTV's carriage of GemsTV programming on DIRECTV's satellite TV service.   GemsTV has purported to unilaterally terminate the contract and has disavowed its obligation to pay DIRECTV.   GemsTV is now in the process of winding down and transferring all assets to its parent company, Gems TV Holdings Limited ("Gems Holdings"), a Cayman Islands company.   The threatened transfer of assets in exchange for no value is a fraudulent transfer under the Unfair Fraudulent Transfer Act, Cal. Civ. Code Section 3439 *et seq*, and also violates fundamental principles of corporate law that require a corporation in the process of winding down to pay the just debts of creditors before distributing remaining assets to its shareholders.   GemsTV is taking these actions at the direction of its parent company, Gems Holdings, a foreign corporation in the Cayman Islands with no assets in the United States, so that once the transfer is complete, DIRECTV will have no means to recover damages for GemsTV's breach.

DIRECTV has more than a probability of prevailing on the merits of its contract claim as GemsTV's repudiation is a clear breach of the parties' contract and contradicted by GemsTV's recent admissions that it is obligated to pay DIRECTV the remaining fees owed under the contract.   Temporary and permanent injunctive relief are appropriate here to prevent DIRECTV from suffering irreparable harm, whereas GemsTV suffers no prejudice from an order preserving the status quo until DIRECTV's claim for breach of contract can be determined.

///

1

## II.   SUMMARY OF FACTS

### A.   The Parties and the Contract

DIRECTV is the operator of the nation's largest provider of satellite television programming, with over 18 million subscribers. (Declaration of Toby Berlin ("Berlin Decl."), ¶ 1.)   DIRECTV provides multi-channel television programming, in both standard and HD format, from satellites in geosynchronous orbit above the earth. (Id., at ¶ 2.) DIRECTV's programming is known as "direct to home" ("DTH") service because the satellite signal is sent directly to each customer's home. (Id.)

GemsTV is a 24/7 shopping channel, specializing in the sale of colored gemstones and other jewelry.  GemsTV is a Delaware corporation with its principal place of business in Reno, Nevada.

Companies who wish to exhibit their content through DIRECTV's satellite TV service are commonly referred to as "Programmers."   (Id., ¶ 4.) DIRECTV is commonly referred to as the "Affiliate" and the agreement under which DIRECTV agrees to air the Programmer's content on DIRECTV's satellite TV system is known as the "Affiliation Agreement."   (Id.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S TRO
LEGAL 02/31824040v1



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S TRO

**B.     GemsTV Admits Its Obligation To Pay Further Fees**

In late February 2010, senior representatives of GemsTV and its parent company, Gems TV Holdings Limited ("Gems Holdings"), came to Los Angeles to meet with DIRECTV and request a modification of the Contract. (Berlin Decl., ¶¶ 14-16.) GemsTV advised that the business was losing money as a result of the economic downturn and was facing the likelihood it would have to discontinue operations. (Id., ¶ 15.) **GemsTV and Gems Holdings freely admitted that GemsTV was obligated under the contract** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At no time did GemsTV suggest that it had the right to unilaterally terminate the Contract. GemsTV requested that DIRECTV agree to modify the Contract ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DIRECTV decided to reject this proposal and advised that DIRECTV expected GemsTV to honor its agreement. (Id., ¶ 17.) Two weeks later, on March 1 the CEO of Gems Holdings contacted DIRECTV and repeated that GemsTV was facing economic difficulties and facing the immediate discontinuance of its business. (Id., ¶ 17.) Again, there was no suggestion that GemsTV had any right to unilaterally terminate the Contract. (Id.) DIRECTV again indicated that it expected GemsTV to honor its obligations under the Contract. (Id.)

**C.     GemsTV Repudiates Its Contract and Threatens to Transfer Assets to its Parent Company in the Cayman Islands**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

1    ██████████████████████ on March 8, 2010, GemsTV gave DIRECTV

2    written notice that it was unilaterally terminating the Contract ██████████

3    ████████████████

4          GemsTV's March 8 letter purporting to terminate

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23          At the same time GemsTV purported to unilaterally terminate the

24    Contract, Gems Holdings announced on March 8 that it was discontinuing GemsTV's

25    operations, winding down the business and preparing to use GemsTV's assets to invest

26    in a new company.  (Berlin Decl., ¶ 22, Exh. 6.)  GemsTV provided DIRECTV with

27    resolutions of the Gems Holdings' Board of Directors to that effect.  (Id.)  Gems

28    Holdings advised that it had entered into an agreement to invest $60 million in

5

1    Multimedia Commerce Group Inc. ("MMCG"), a company that operates Jewelry

2    Television, another business engaged in marketing and distribution of jewelry and

3    related products through satellite TV programming.   (Id., ¶ 23).   To make that

4    investment, Gems Holdings pledged $20 million in cash, $20 million in inventories

5    and $20 million in other intangible assets. (Id., Exh. 7.)

6           Significantly, the assets to be invested include GemsTV's assets, and

7    GemsTV is receiving nothing in return. Gems Holdings announced that the

8    investment was a means to "liquidate remaining [GemsTV] inventory" as the company

9    winds up its operations.   (Berlin Decl.,¶ 23.) According to GemsTV, "[n]o one else in

10   the US can liquidate our mix of inventory as effectively." (Berlin Decl., ¶ 23, Exh. 7.)

11   This liquidation of assets is intended to generate funds for an investment by Gems

12   Holdings in MMCG, not to pay debts owed by GemsTV. The proposed Gems

13   Holdings investment in MMCG is scheduled to close by May 15, 2010. (Id., ¶ 23). In

14   the interim, GemsTV will wind down its operations and cease doing business. Gems

15   Holdings's Chairman Jason Choo has been quoted as saying that GemsTV is "going to

16   mothball" its business. (Ruga Decl., Exh.B.)

17          The threatened transfer of GemsTV's assets to Gems Holdings for an

18   investment in MMCG will render GemsTV insolvent and without assets to

19   compensate DIRECTV for the ███████ damages resulting from GemsTV's

20   breach.  There is every reason to believe this is precisely GemsTV's intent.  Gems

21   Holdings emphasizes in its public materials that it is a Cayman Islands company with

22   no assets in the United States. (Ruga Decl., ¶ 3, Exh. A.)  Gems Holding publicly

23   advertises that it is difficult for creditors to bring claims against Gems Holding

24   because of its status as a Cayman Islands company.   (Id.)   According to Gems

25   Holding, there is substantial question whether the Cayman Islands would even

26   recognize a US judgment against Gems Holdings. (Id.)  GemsTV is now threatening

27   to transfer its assets to Gems Holdings, at the direction of Gems Holdings, in a manner

28   that would put GemsTV's assets out of the United States and possibly beyond the

1   reach of any claim by DIRECTV. (Id.)

2   **III.   A  TEMPORARY  RESTRAINING  ORDER  SHOULD  ISSUE  TO**

3   **PREVENT  IRREPERABLE  INJURY  TO  DIRECTV  AND  TO**

4   **PRESERVE THE STATUS QUO**

5   "A plaintiff seeking a preliminary injunction must establish [1] that he is

6   likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the

7   absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4]

8   that an injunction is in the public interest." *Johnson v. Couturier*, 572 F.3d 1067,

9   1078 (9th Cir. 2009) (*quoting Winter v. Natural Res. Defense Council, Inc.*, --U.S.--,

10   129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)); *accord Stormans, Inc. v. Selecky*, 586

11   F.3d 1109, 1127 (9th Cir. 2009) (*citing Winter*, 129 S.Ct. at 374).   In the Ninth

12   Circuit, a preliminary injunction is appropriate if the plaintiff demonstrates that

13   "serious questions going to the merits [are] raised and the balance of hardships tips

14   sharply in the plaintiff's favor." *Lands Council v. McNair*, 537 F.3d 981, 987 (9th

15   Cir.2008) (en banc) (internal citations and quotation marks omitted). "In each case,

16   courts must balance the competing claims of injury and must consider the effect on

17   each party of the granting or withholding of the requested relief." *Indep. Liv. Cntr. of*

18   *Southern Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir.2009) (*quoting*

19   *Winter*, 129 S.Ct. at 376) (internal quotation marks omitted). "If the balance of harm

20   tips decidedly toward the plaintiff, then the plaintiff need not show as robust a

21   likelihood of success on the merits as when the balance tips less decidedly." *State of*

22   *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir. 1988) (citations

23   omitted).

24   The record here demonstrates that the balance of harm weighs

25   overwhelmingly in favor of DIRECTV. DIRECTV is more than just likely to prevail

26   on the merits - GemsTV's breach of contract is established by their repudiation of the

27   Contract ███████████████████████████████████████████

28   ███████████████████████████████   The purported notice of

7

1   termination is contrary to the terms of the Contract

2

3

4

5   GemsTV is in the process of transferring assets to its sole shareholder, Gems

6   Holdings, a Cayman Islands company, so that they can be used to make an investment

7   in another business. The threatened transfer would render GemsTV without assets and

8   unable to pay the just debts of its creditors, including DIRECTV. GemsTV is going

9   out of business and suffers no injury if the Court enjoins the transfer of assets until

10  DIRECTV's contract claim can be heard.

11          As detailed below, GemsTV's conduct is precisely the kind of conduct

12  barred by California's Unfair and Fraudulent Transfer Act, Cal. Civ. Code Section

13  3439 *et seq.* ("UFTA") which expressly authorizes the injunctive relief requested by

14  DIRECTV here.

15      A.      **DIRECTV Has A Likelihood of Success On The Merits Of Its Claim**

16              **for Injunctive Relief Under UFTA**

17          DIRECTV's second claim for relief is for fraudulent conveyance under

18  UFTA.   The purpose of the fraudulent transfer law is to prevent debtors from

19  transferring away valuable assets in exchange for less than adequate value, leaving

20  insufficient assets to compensate honest creditors. *In re Bay Plastics, Inc.*, 187 B.R.

21  315, 322 (C.D. Cal. 1995).   UFTA "sets forth creditors' remedies, which include

22  avoidance of a transfer, attachment, and *the equitable remedies of injunction* and

23  receivership as well as any other relief the circumstances may require." *Filip v.*

24  *Bucurenciu*, 129 Cal.App.4th 825, 830, 28 Cal.Rptr.3d 884, 887 (2005) (quotations

25  omitted, emphasis added).

26          A party seeking injunctive relief under UFTA need not prove it will

27  ultimately prevail on the merits. Rather, all that need be shown is a *reasonable*

28  *probability* of success. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).

8

1   Here, DIRECTV more than meets that standard.

2       Under the UFTA, "[a] transfer made or obligation incurred by a debtor is

3   fraudulent as to a creditor, whether the creditor's claim arose before or after the

4   transfer was made or the obligation was incurred, if the debtor made the transfer or

5   incurred the obligation... (1) [w]ith actual intent to hinder, delay, or defraud any

6   creditor or debtor... [or] (2) [w]ithout receiving a reasonably equivalent value in

7   exchange for the transfer or obligation, and the debtor...[w]as engaged or was about

8   to engage in a business or a transaction for which the remaining assets of the debtor

9   were unreasonably small in relation to the business or transaction." Cal. Civ. Code §

10  3439.04(a)(1) & (2)(A). A party need only establish actual intent or failure of receipt

11  of reasonable equivalent value to be successful on a UFTA claim. *Annod Corp. v.*

12  *Hamilton & Samuels*, 100 Cal. App. 4th 1286, 1294, 123 Cal. Rptr.2d 924, 929 (2002)

13  ("Section 3439.04 is construed to mean a transfer is fraudulent if the provisions of

14  either subdivision (a)[(1)] or subdivision [(a)(2)] are satisfied.").

15      Here, the facts demonstrate that GemsTV had both actual intent to

16  defraud DIRECTV and that GemsTV receives no equivalent value for its transfer of

17  assets to its parent company Gems Holdings. *See e.g., Filip, supra,* 129 Cal.App.4th at

18  829 (quoting *Kirkeby v. Superior Court*, 33 Cal.4th 642, 648, 15 Cal.Rptr.3d 805

19  (2004)) ("A fraudulent conveyance under the UFTA involves 'a transfer by the debtor

20  of property to a third person undertaken with the intent to prevent a creditor from

21  reaching that interest to satisfy its claim.'"). We detail below DIRECTV's satisfaction

22  of every element of an UFTA claim.

23          a.    **The Proposed Transfer to Gems Holdings is A Transfer**

24                **Under UFTA**

25      The UFTA defines a "transfer" as "every mode, direct or indirect,

26  absolute or conditional, voluntary or involuntary, of disposing of or parting with an

27  asset or an interest in an asset, and includes payment of money, release, lease, and

28  creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(i). Under UFTA

9

1   "[a] transfer is made:…[w]ith respect to an asset that is not real property…when the

2   transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial

3   lien otherwise than under this chapter that is superior to the interest of the transferee."

4   Id., § 3439.06(a)(2).    However, if "the transfer is not so perfected before the

5   commencement of an action for relief under this chapter, [then] the transfer is deemed

6   made immediately before the commencement of the action." Id., at § 3439.06(b).

7           GemsTV's threatened transfer of its assets to its Cayman Islands parent

8   plainly meets the definition of transfer under UFTA.    The threatened transfer is

9   "deemed . . . to be perfected immediately before the filing of an action [to] avoid it;

10  without such a provision to cover that eventuality, an unperfected transfer would

11  arguably be immune to attack."    Uniform Laws Annotated, Uniform Fraudulent

12  Transfer Act 1984 § 6, com. 1 (discussing the reasoning behind the identical

13  subsection in the Uniform Act); Section 3439.06(b).  Once the threatened transfer is

14  effectuated, the assets would not be reachable by a judicial lien, as the assets would be

15  the property of Gems Holding.  This is precisely the situation UFTA was designed to

16  avoid by permitting injunctions against such threatened transfers.

17              **b.    GEMSTV Did Not Receive Reasonable Equivalent Value**

18                   **For Its Transfer And It Is Engaged In A Business For**

19                   **Which The Remaining Assets Are Unreasonably Small**

20          Under the UFTA "[a] transfer…is fraudulent as to a creditor…if [the

21  debtor] the made the transfer…[w]ithout receiving a reasonably equivalent value in

22  exchange for the transfer…and the debtor…[w]as engaged… in a business or

23  transaction for which the remaining assets of the debtor were unreasonably small in

24  relation to the business or transaction." Cal. Civ. Code § 3439.04(a)(2)(A).

25          Here, GemsTV threatens to transfer its assets in exchange for nothing.

26  Gems Holdings is directing GemsTV to make the transfer so that GemsTV's assets can

27  be used by Gems Holdings to make an investment in MMCG. (Berlin Decl., ¶¶ 23-

28  24.)   Gems Holdings seeks to liquidate GemsTV's assets by transferring them to

1    MMCG as part of a $60 million investment, leaving GemsTV a "mothball" with no

2    assets.    Under the UFTA "[v]alue is given for a transfer or an obligation if, in

3    exchange for the transfer or obligation, property is transferred or an antecedent debt is

4    secured or satisfied..."    Cal. Civ. Code § 3439.03; *Annod Corp.*, 100 Cal.App.4[th] at

5    1297 (quoting statute).    "Because the policy behind fraudulent conveyance law is to

6    preserve assets of the estate, reasonably equivalent value is determined from the

7    standpoint of the estate's creditors, it is not determined from the defendant's

8    perspective."    *In re 3DFX Interactive, Inc.*, 389 B.R. 842, 863 (Bankr. N.D. Cal.

9    2008); see also, Uniform Fraudulent Transfer Act, § 3, com. 2 ("'Value' is to be

10    determined in light of the purpose of the Act to protect a debtor's estate from being

11    depleted to the prejudice of the debtor's unsecured creditors. Consideration having no

12    utility from a creditor's viewpoint does not satisfy the statutory definition.").

13            GemsTV is doing nothing more than emptying its bank accounts and

14    transferring inventory to Gems Holdings in order to make itself judgment proof.    It is

15    equally clear that the remaining assets - zero - has no relationship to GemsTV's

16    business.    "[A] transfer leaves a debtor with assets that are 'unreasonably small in

17    relation to the debtor's business or transaction' if the assets are not reasonably likely

18    to meet the debtors' present and future needs.    This inquiry is obviously related to

19    whether the assets exceeded the total of the debtor's existing and potential liabilities."

20    *Intervest Mortgage Investment Co. v. Skidmore*, 655 F.Supp. 2d 1100, 1106 (E.D. Cal.

21    2009).    With the transfer of all of GemsTV's assets to its sole shareholder Gems

22    Holdings in exchange for no consideration, GemTV will leave itself with assets that

23    are unreasonably small in relation to its debt to DIRECTV.

24            **c.    Defendant Had Actual Intent To Hinder, Delay, Or**

25                    **Defraud Plaintiff**

26            For the reasons set forth above, DIRECTV has established that the

27    threatened transfer is a fraudulent transfer under UFTA Section 3439.04(a)(2). This

28    showing is alone sufficient for the Court to enjoin the transfer. While DIRECTV has

11

no need to establish that the transfer is also prohibited under UFTA Section 3439.04(a)(1), the record here likewise supports that conclusion.

"[A] transfer made by a debtor is fraudulent under the UFTA if the debtor made the transfer with the actual intent to hinder, delay, or defraud any creditor of the debtor." *Filip, supra,* 129 Cal.App.4th at 834. In determining actual intent, Courts may consider a number of the factors or "badges of fraud," including:

> "(1) Whether the transfer or obligation was to an insider. (2) Whether the debtor retained possession or control of the property transferred after the transfer. (3) Whether the transfer or obligation was disclosed or concealed. (4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit. (5) Whether the transfer was of substantially all the debtor's assets. (6) Whether the debtor absconded. (7) Whether the debtor removed or concealed assets. (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. (11) Whether the debtor transfer the essential assets of the business to a lien holder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b)(1)-(11); *Filip, supra,* 129 Cal.App.4th at 834. "[T]hese factors do not create a mathematical formula to establish actual intent. There is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other." *Filip, supra,* 129 Cal.App.4th at 834 (citing *Annod Corp. v. Hamilton & Samuels,* 100 Cal.App.4th 1286, 1298-99, 123 Cal.Rptr.2d 924 (2002)). These factors do not form an exclusive list, but may be considered by a court in addition to other factors. Cal. Civ. Code. § 3439.06(b).

In this case, several of the "badges" of fraud have been met in addition to

12

1    other factors that establish GemsTV's intent to defraud.

2    **(1)    Transfer is Being Made To An Insider**

3    Evidence that a transfer was made to an insider is an indicia of fraud that

4    shows fraudulent intent.  Cal. Civ. Code § 3439.06(b)(1).  Courts have found insiders

5    to be any entity whose close relationship with the debtor subjects any transaction

6    made between the debtor and insider to heavy scrutiny.  *Hahn v. Love*, 273 S.W. 3d

7    712 (Tex. App. 2008).  Here, GemsTV is a wholly-owned subsidiary of Gems

8    Holdings and its actions are controlled by Gems Holdings.[2]  Gems Holdings' directors

9    voted to cease the operations of GemsTV and then invest GemsTV's assets into

10   MMCG.  In addition, it was the president of Gems Holdings that contacted DIRECTV

11   in February 2010 to attempt to renegotiate the Contract. Gems Holdings is more than

12   an "insider" - it wholly controls the actions of GemsTV. Thus, this badge of fraud is

13   strongly present.

14   **(2)    Transfer Of Substantially All Of GemsTV's Assets**

15   Evidence that a transfer was of all or substantially all the debtor's assets

16   is evidence of fraudulent intent.  Cal. Civ. Code § 3439.06(b)(5).  The potential

17   transfer of GemsTV's assets to Gems Holdings would be of all of GemsTV's assets.

18   GemsTV is winding down and intends to liquidate all of its assets by having Gems

19   Holdings invest them in MMCG.  (Berlin Decl., ¶¶ 23-24.)  Unless enjoined by this

20   Court, the assets being transferred will be part of a $60 million proposed investment

21   by Gems Holdings into MMCG.  Therefore, this badge of fraud also weighs in

22   DIRECTV's favor.

23   **(3)    The Transfer Will Remove All Of GemsTV's Assets**

24   Removal of a debtor's assets is also a badge of fraud sufficient to

25   establish a fraudulent intent.  Cal. Civ. Code § 3439.06(b)(7).  As noted, GemsTV

26   _____

27   [2] According to Gems Holding's 2006 Initial Public Offering prospectus, GemsTV is owned entirely by NCS Group Co., Ltd. a Thai corporation, which is 99.99% owned by Gems Holdings.  Gems

28   Holdings' Board of Directors resolution directing GemsTV to cease operations describes GemsTV as its "wholly-owned subsidiary." (Berlin Decl., Exh. 7.)

13

1  threatens to remove all assets, including inventory, and transfer them to the Cayman

2  Islands parent. (Berlin Decl., ¶ 24.)  This would leave GemsTV without any assets to

3  satisfy DIRECTV's judgment.

4        **(4)    GemsTV Will Become Insolvent Upon Completion**

5                    **Of The Fraudulent Transfer**

6              Another indicia of fraud is the potential or actuality that a debtor will

7  become insolvent upon the completion of a fraudulent transfer.  *See* Cal. Civ. Code §

8  3439.06(b)(9).  Under the UFTA, "[a] debtor is insolvent if, at fair valuations, the sum

9  of the debtors' debts is greater than all of the debtor's assets."  Cal. Civ. Code §

10  3439.02(a).    "Assets under this section do not include property that has been

11  transferred, concealed, or remove with intent to hinder delay, or defraud creditors or

12  that has been transferred in a manner making the transfer voidable under this chapter."

13  Cal. Civ. Code § 3439.02(d).  Here, GemsTV is admittedly attempting to wind-up its

14  operations and liquidate all of its assets. █████████████████

15  ████████████████████████  But once the threatened transfer is

16  completed, GemsTV will be insolvent because it owns no assets:  in GemsTV's

17  words, it is being "mothballed."

18        **(5)    GemsTV Receives No Consideration For The**

19                    **Transfer**

20              Another factor that courts may consider to show actual intent is whether

21  the value of the consideration received by the debtor was reasonably equivalent to the

22  value of the asset transferred. See Cal. Civ. Code § 3439.04(b)(8).  As detailed above,

23  this factor weighs heavily in favor of DIRECTV because GemsTV receives nothing

24  for transferring its assets to its parent company. As such this badge of fraud clearly

25  falls in DIRECTV's favor.

26        **(6)    GemsTV's Transfer Would Violate The Governing**

27                    **Corporations Code**

28              The fraudulent nature of GemsTV's threatened transfer is underscored by

14

1  GemsTV's violation of fundamental obligations under corporate law to provide for its

2  creditors in the process of winding down.  GemsTV has elected to cease operations

3  and is actively involved in winding-up its business. (Berlin Decl., ¶¶ 22-24) GemsTV

4  thus has a duty under Delaware law (the state of GemsTV's incorporation) to provide

5  for its creditors prior to distributing its assets to its shareholders.  See 8 Del. C. §

6  280(b)(2).  The same obligations exist under the California Corporation's Code (Cal.

7  Corp. § 2004) and Nevada Corporation's Code (NSR 78.590(1).) [3]  Despite this duty,

8  GemsTV seeks to transfer its assets to its sole shareholder, Gems Holdings, without

9  adequately providing for DIRECTV ███████████████████████████

10 █████████████  This violates the familiar rule that a corporation actively involved

11 in the process of dissolving and winding-up its business must satisfy or provide for its

12 creditors *before* it distributes any assets to its shareholders.  See also W. Fletcher,

13 *Fletcher Cyclopedia of the Law of Corporations*, § 8224 (2009) ("After dissolution,

14 the property of the corporation passes to the shareholders, subject to the payment of

15 corporate debts.").

16      A Court determining fraudulent intent under UFTA should take into

17 account all of the relevant circumstances. *See Annod*, 100 Cal.App.4th at 1298.

18 GemsTV's conduct inconsistent with its duties to creditors under corporate law further

19 supports a finding of fraudulent intent.

20

21 [3]See 8 Del. C. § 281(a)(4) ("A dissolved corporation... [s]hall pay or make provision for all other
22 claims that are mature, known and uncontested or that have been finally determined to be owing by
   the corporation or such successor entity. . . . Any *remaining assets* shall be distributed to the
23 stockholders of the dissolved corporation." (emphasis added)); Cal. Corp. C. § 2004 ("*After
   determining that all the known debts and liabilities of a corporation in the process of winding up
24 have been paid or adequately provided for*, the board shall distribute all the remaining corporate
   assets among the shareholders." (emphasis added)); NSR 78.590(1) ("Upon the dissolution of any
25 corporation...the directors become trustees thereof, with full power to...divide the money and other
   property among the stockholders, *after paying or adequately providing for the payment of its
26 liabilities and obligations.*" (emphasis added)). It is unnecessary for the Court to determine whether
   Delaware Law (the place of incorporation), California law (applicable under the parties' choice of
27 law clause in the contract), or Nevada law (GemsTV's principal place of business) applies, because
   the law of all jurisdictions requires a corporation that is winding down to pay the just debts of
28 creditors before distributing assets to shareholders.

**B.**   **DIRECTV Suffers Certain and Irreparable Injury if a Temporary Restraining Order is Not Issued**

DIRECTV must demonstrate irreparable harm if injunctive relief is denied and that the balance of equities weight in DIRECTV's favor. *Walczak, supra,* 198 F.3d at 731. That showing is fully made here.

**1.**   **Irreparable Injury is Shown Where An Asset Transfer Will Render the Defendant Judgment Proof**

Courts have frequently found that irreparable harm is shown when there is danger that defendant "may be able to transfer assets out of Plaintiffs' reach." *Burnett v.* Rowzee, SACV07641DOCANX, 2007 U.S. Dist. LEXIS 74275, *23 (C.D. Cal. Sept. 26, 2007); *c.f. Rosen Entertainment Systems, LP v. Eiger Vision*, 343 F.Supp.2d 908, 920 (C.D. Cal. 2004) (finding defendant to be "judgment proof" favored the finding of irreparable harm); *Aviara Parkway Farms, Inc. v. Agropecuaria La Finca, S.P.R. de R.L.*, 08CV2301JMCAB, 2009 U.S. Dist. LEXIS 7173, *9 (S.D. Cal. Feb 2, 2009) (noting that a judgment proof defendant is not deterred by the threat of money damages, so an equitable remedy may be essential).

Thus, for example, in *Rosen Entertainment Systems* ,the court found "that [Defendant's] statements to [Plaintiff] that it would go out of business if forced to pay [Plaintiff] even a low royalty rate, coupled with the complete lack of evidence of [Defendant's] ability to pay a judgment, favors a finding of irreparable harm and granting a preliminary injunction. 343 F.Supp.2d at 920.   It is settled law that "[p]reliminary injunctions are . . . proper to prevent a defendant from making a judgment uncollectible." *III Finance Ltd. v. The Aegis Consumer Funding Group, Inc.*, 1999 WL 461808 *4, 99 CIV. 2579 (DC) (S.D.N.Y. July 2, 1999).

This case presents precisely the circumstances where courts have found irreparable harm through a debtor's attempts to make itself judgment proof. Once the threatened transfer to the Cayman Island parent company is complete, the assets of GemsTV will be gone, leaving an empty, judgment proof entity. There is no doubt

16

this is GemsTV's and Gems Holdings goal.  Indeed, Gems Holdings proudly boasts in its publicly available materials that its assets are beyond the reach of US law:

> "All or a substantial portion of our assets... are located outside the United States. As a result, it may not be possible for investors to effect service of process within the United States upon us or such persons, or to enforce in the United States any judgment obtained in the United States courts against us... including judgments based upon the civil liability provisions of the securities laws of the United States or any state or territory of the United States. There is uncertainty as to whether the courts of the Cayman Islands would recognize and enforce judgments of United States courts obtained against us or our Directors or officers... predicated upon the civil liability provisions of the securities laws of the United States or any state in the United States or entertain original actions brought in Cayman Islands courts against us or our Directors or officers .... predicated upon the securities laws of the United States or any state in the United States."

(Ruga Decl., Exh. A.)

## C.   The Balance of Equities Weighs in DIRECTV's Favor

The balance of equities overwhelmingly favors DIRECTV. In contrast to the clear irreparable injury suffered by DIRECTV if the transfer is completed, GemsTV suffers no harm.  There can be no argument that GemsTV needs the funds for ongoing business operations - in point of fact, GemsTV's business is being "mothballed" and all of GemsTV's assets are destined to be transferred to the parent for an investment scheduled to be completed on May 15. (Berlin Decl., ¶ 24; Ruga Decl., Exh. B.)

The record here is far more compelling than *Johnson v. Couturier*, where the Ninth Circuit found that balance of equities weighed in favor of an injunction. In

1  that case, the defendant-directors of an ESOP were accused of breaching their

2  fiduciary duties to the ESOP under ERISA. 572 F.3d at 1081. Plaintiffs sought to

3  enjoin the advance of the defendants' defense costs under their indemnification

4  agreement. *Id.* If defendants were found to violate ERISA, then the indemnification

5  agreement would be null and void, and as such, the plaintiffs would be entitled to a

6  return of the defense advance. *Id.*, at 1081-82. Even though defendants would be

7  forced to pay out-of-pocket to defend an expensive ERISA action, the Court found

8  that "any such consequences are outweighed by the potential hardship to [p]laintiffs if

9  advanced defense costs are not reimbursed." *Id.*, at 1082. Since "recovery by

10  [p]laintiffs of any advanced defense costs seems remote," the balance of equities tips

11  in favor of plaintiffs. *Id.*

12      Here, recovery by DIRECTV of any sums against GemsTV is not just

13  "remote," but impossible if GemsTV is permitted to dispose of its assets by

14  transferring them to its Cayman Islands parent. By contrast, GemsTV suffers no

15  injury of any kind if required to comply with its statutory duty to adequately provide

16  for it shareholders in its dissolution process. The balance of hardships falls heavily in

17  DIRECTV's favor.

18      **D.   Injunctive Relief Is In the Public Interest**

19      "In excising their sound discretion, courts of equity should pay particular

20  regard for the public consequences in employing the extraordinary remedy of

21  injunction." *Johnson*, 572 F.3d at 1082 (citing *Winter*. 129 S.Ct. at 376-77). "The

22  public interest analysis for the issuance of a preliminary injunction requires us to

23  consider 'whether there exists some critical public interest that would be injured by

24  the grant of preliminary relief.' *California Pharmacists Ass'n v. Maxwell-Jolly*, ---

25  F.3d ----, 2010 WL 715401 *14 (9th Cir. 2010). District courts have found that the

26  issuance of injunctive relief freezing a defendant's assets that were at risk of being

27  transferred away is consistent with the public interest. *Dargan v. Ingram*, 2009 WL

28  1437564 * 7, C08-1714- RSL (W.D. Wash. May 22, 2009) ("The Court finds that

18

1  issuance of the preliminary injunction [to freeze defendant's assets] will have no

2  harmful effect on the public interest.").

3      The public interest will be strongly served by granting this injunction to

4  prevent GemsTV from skirting its lawful debts and moving assets out of the US in an

5  attempt to avoid the consequence of its unlawful conduct.

6  **E.**   **Plaintiffs Should Not Be Required To Post A Bond To Secure This**

7  **Injunction**

8      The Ninth Circuit has held that Federal Rule 65(c) gives the district court

9  wide "discretion as to the amount of the security required, *if any*" prior to the issuance

10  of the injunction. Fed. R. Civ. P. 65(c).  *Jorgensen v. Cassiday*, 320 F.3d 906, 919

11  (9th Cir. 2003) (emphasis in original); *Walczak, supra*, 198 F.3d at 733. "The district

12  court may dispense with the filing of the bond when it concludes there is no realistic

13  likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen*,

14  320 F.3d at 919.

15      This is a case where no bond need be posted.  The issuance of this

16  injunction would not result in any substantial harm, financial or otherwise, to

17  GemsTV.  Rather, injunctive relief would only maintain the status quo, as GemsTV

18  would continue to maintain its assets at their current level.  This is no more than

19  GemsTV is required to do under the corporate law to make provision for its just debts.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S TRO

LEGAL02/31824040v1

1

## IV. <u>CONCLUSION</u>

2      For the foregoing reasons, DIRECTV respectfully requests that this Court

3   issue a temporary restraining order enjoining GemsTV from ███████████

4   ████████████████████████████████████████████████████████████.

5

6   DATED: March 22, 2010          LOUIS A. KARASIK
                                    ANDREW E. PARIS
7                                   CASONDRA K. RUGA
                                    MITRA M. ESKANDARI-AZARI
8                                   **ALSTON & BIRD LLP**

9

10                                  _____
                                    Andrew E. Paris
11                                  Attorneys for Plaintiff
                                    **DIRECTV, INC.**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S TRO
LEGAL02/31824940v1